IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2009

## CARL STEVENSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-00325      Carolyn Wade Blackett, Judge**

---

**No. W2007-01658-CCA-R3-PC  - Filed October 19, 2009**

---

The petitioner, Carl Stevenson, appeals the judgment of the Shelby County Criminal Court denying his petition for post-conviction relief.  The petitioner, pursuant to a negotiated plea agreement, pled guilty to criminal attempt murder in the first degree and especially aggravated robbery and received a concurrent sentence of 15 years in the Department of Correction.  On appeal, he contends that the post-conviction court erred when it found that the petitioner failed to prove by clear and convincing evidence that he had received ineffective assistance of counsel.  After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

R. Andrew Hutchinson, Memphis, Tennessee, for the appellant, Carl Stevenson.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dennis Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

1. Facts

A. Guilty Plea Hearing

A Shelby County Grand Jury indicted the petitioner for criminal attempt first degree murder and especially aggravated robbery on January 15, 2004.  On August 15, 2005, the petitioner entered guilty pleas to the offenses as charged.

During the plea submission hearing on August 15, 2005, the trial court and the petitioner engaged in the following colloquy:

By The Court:

Q:      Mr. Stevenson, you understand that you don't have to plead guilty today. You have a right to plead not guilty, go to trial in front of a jury, be represented by [counsel], [cross-examine], subpoena, testify, appeal if you lose. You're giving up all of these rights by pleading guilty today. Do you understand that?
A:      Yes, sir.
Q:      Are you pleading guilty freely and voluntarily?
A:      Yes, sir.
Q:      Anybody forcing you to plead guilty?
A:      No, sir.
Q:      Have you discussed your case thoroughly with [counsel]?
A:      Yes, sir.
Q:      Do you have any questions about your guilty plea today?
A:      No, sir.

The following facts, were recited by the prosecutor:

[State]:      Your Honor, the facts of this matter would have been that on October 14, 2003, the Pizza Hut at 4630 American Way was robbed; the victim of that store being Sharon Martin, the manager of the store. The proof would have been that both Robert Davis and the defendant, Carl Stevenson, were employees there and that they entered the store with the intent to take the money contained within the safe; that Robert Davis used a knife to stab the victim, Sharon Martin; and while this was taking place, Carl Stevenson took the money trays from the safe - took the DVD surveillance disk from the disk.

And during the course of the attack, Ms. Sharon Martin was able to disable the first knife - ben[d] it, at which time, Robert Davis requested Carl Stevenson to get him the second knife, which Carl Stevenson did. At that time, Sharon Martin was able to hit the silent alarm. Officers of the Memphis Police Department of the east precinct were able to respond and observe Robert Davis attempting to stab Sharon Martin more times while Carl Stevenson was leaving the business with the trays of money.

Mr. Stevenson was detained; taken down and questioned where he freely and voluntarily gave a statement to admitting to being involved with the planning and the execution of this robbery; and he admitted to getting the second knife when the first knife was bent.

These events happened here in Shelby County. Do you stipulate that there is a factual basis?

-2-

[Defense]: Your Honor, we so stipulate to those facts and ask you to accept the plea.

Your Honor, just for the sake of the record, it's a little bit after 4:00. His father is here; his mother is here; his girlfriend is here. We've been discussing this case - this case has been with our office since its inception. We have been in intense discussions on this case since early this morning - off and on - but primarily - and also this afternoon from about quarter to 2:00 until right now. The family understands the matter. He certainly understands. I would like to ask the court if you will delay the entry of this judgment until Wednesday morning at 9:30.

The Court: Mr. Stevenson, first of all, I'll accept your guilty pleas as being freely and voluntarily entered; and I will, reluctantly - but at [counsel's] request, give you an opportunity to finalize your personal matters before you report and begin serving your sentence. Hold this matter over for two days until Wednesday morning. Be back this Wednesday morning, which will be the 17th of August at 9:00 o'clock here. If you don't show up, you will be charged with another offense of failing to appear in court - another felony; and if convicted of that, it would be served consecutively to this offense. So, you're not going to solve anything if you don't show up. Be here at 9:00 o'clock Wednesday morning to begin serving this sentence.

[Defendant] Yes sir.

If I go to jail, where will I serve my time at?

The Court: I have no idea. It's up to the Department of Corrections. They'll classify you and determine where you are to serve your time. I don't have any input to that. It's strictly up to the Department of Corrections.

Be back in here Wednesday morning.

You are to have no contact with your victim or any of the people related to this offense as [you] leave today or when you return on Wednesday or anytime between now and Wednesday morning.

[Defendant] All right, sir.

B. Post-Conviction Hearing

At the post-conviction hearing, the petitioner acknowledged that he pled guilty to criminal attempt murder in the first degree and especially aggravated robbery; however, the petitioner stated that his guilty pleas were involuntary. The petitioner stated that prior to entering his pleas, he was in a back room with his counsel, father, mother and girlfriend. According to the petitioner, every time he stated that he wanted to go to trial, counsel would say if he went to trial he would be sentenced to "thirty, thirty-five, [or] forty years." In addition, counsel would say that the petitioner had a second knife at the time of the crime. The petitioner stated that they began discussions at nine o'clock that morning and discussions lasted until around four o'clock when he entered his pleas.

When asked why he told the trial judge his pleas were voluntary, the petitioner stated that "[he] didn't know what [he] was actually doing." The petitioner further stated that counsel told him to take the stand, answer the judge's questions, and "go on ahead and roll with it like that." The petitioner said that counsel told him he was going to the penitentiary in order to "coerce [him] when [he] was . . . trying to tell him that [he] . . . wanted to go to trial." When asked about other evidence of coercion, the petitioner responded by referring to when "[counsel] was constantly talking about a second knife."

The petitioner stated that he notified counsel of a potential witness, other than the police officers. The petitioner said that the witness knew of the situation and wanted to testify, but counsel said that it would not have helped his case. The petitioner stated that he found the *Christian v. Ford* case, which "clearly states the [d]efense counselor is not . . . to make the decisions [of] how much [a witnesses' testimony] would count for, it's upon the jury." The petitioner testified that in his opinion, counsel was coercing him rather than giving him legal advice.

When asked about his allegation that defense counsel was ineffective in the process of preparation, the petitioner stated that defense counsel "didn't even bother investigating this whole case." The petitioner testified that the felony response supplement showed that only "one bloody, twelve[-]inch knife, with a[n] eight[-]inch blade" was tagged at the crime scene. The petitioner also testified that the Memphis Police Department evidence log listed that only one knife was found at the scene. According to the petitioner, by saying that there was a second knife, counsel was "actually being on the prosecutor's side" and "putting something in [his] hand" instead of protecting his interest. The petitioner stated that counsel "could have investigated the crime scene" to obtain impeachment evidence to contradict Officer Steele's statement. The petitioner also stated that counsel's failure to investigate was evident when his response to the petitioner's request for information referenced a second knife.

The petitioner testified that the motion to suppress that counsel filed also indicated that he did not investigate the case. The petitioner said that counsel did not talk to anyone about his case. He also said that the motion to suppress addressed an illegal search and seizure and it should have addressed suppression of his statement. The petitioner stated that counsel was ineffective because he was not present at the preliminary hearing or the bond hearing. The petitioner further stated that the preliminary hearing transcript was missing the section indicating that the victim stated that the petitioner did not harm her and that she saw him shaking and scared, but counsel never corrected the error. He said that his post-conviction counsel attempted to locate the transcripts, but they were lost.

-4-

The petitioner was seventeen at the time of his arrest and said that he had "never been in no [sic] trouble before." The petitioner stated that when he gave his statement, his mother advised the officers that she wanted a lawyer present and the officers "said they was [sic] going to get a lawyer but they needed to talk to [him] right now." According to the petitioner, the officers coerced him into "speaking" by telling him the victim died, that he was facing sixty years to life in prison, and that [he] was going to "get raped" and would be "somebody's b****'" while in prison. The petitioner said he was "scared" and "didn't know what to do."

The petitioner testified that if his counsel had represented him properly, he "would have went [sic] to trial" because what was said about him was untrue. He stated that if counsel "would have did [sic] his job he would have been able to file the correct motions . . . [a]nd . . . impeach some of the witnesses[.]" The petitioner said that if counsel would have done these things, he could have been convicted for a lesser included offense or "could have been exonerated from the charges." The petitioner also stated that counsel did not bring up his age, lack of previous convictions, or the possibility of mitigating the offenses.

On cross-examination, the petitioner admitted that he was caught at the scene of the crime. The petitioner denied giving his co-defendant another knife and stated he only said he did because the police officer told him that he would "help [him] out." The petitioner said that counsel "didn't do his job" and he "wanted to go to trial." He also said that he "didn't rob nobody [sic]." The petitioner identified both his and his mother's signatures on the document that the officer discussed with him before he gave his statement.

The petitioner recalled pleading guilty and stating that he was doing so freely and voluntarily. He testified that he remembered answering "no, Sir" when the judge asked him if he was forced to plead guilty. The petitioner stated that when they discussed the case, counsel made him "change his mind against his will." The petitioner further stated that counsel coerced him "by saying [there] was a second knife" and there was an "ample amount of witnesses" to testify against him. According to the petitioner, there "wasn't a lot of witnesses on [his] case" and counsel could have "clearly impeached" the police officer and his co-defendant's testimony. The petitioner said that counsel coerced him by advising him that he could face up to fifty years in prison if the jury convicted him as charged. He testified that counsel told him that it was in "his best interest" to take the plea bargain for a fifteen-year jail sentence rather than go to trial and run the risk of being sentenced to serve up to fifty years.

Counsel testified that the petitioner was charged with Class A felonies and was "looking at a minimum of forty years and a maximum of fifty had he been convicted." Counsel said that he was allowed access to the District Attorney's file, and he reviewed the petitioner's statement to the police. According to counsel, "there [was] no use to attempt to suppress his statement because [his mother] was not going to say that . . . he was coerced." Counsel stated that he investigated the statement of one of the officers that saw the petitioner at the scene of the crime with a cash drawer in his hand. He also investigated the statements of the officer who took the petitioner's statement and the victim. Counsel further stated that there were "four witnesses [that] were going to put [the petitioner] at the scene . . . as participating[.]"

Counsel stated that the case started off with a twenty-five year offer because the state felt the case would be a "slam dunk", but eventually the offer was reduced to fifteen years. Counsel said that on the day of trial he discussed the case and whether the petitioner should plead guilty with the petitioner and his mother. Counsel testified that he explained what was going on to the petitioner and did not force him to plead guilty. Counsel further testified that he advised the petitioner to take the offer of fifteen years "based upon the law at the time" and the "cruelty" that was shown to the victim.

On cross-examination, counsel testified that the victim was hesitant about speaking to him and "she was still suffering the shocks [sic] of being . . . stabbed." Counsel also testified that he did not visit the crime scene because "there was nothing to [gain] from visiting the crime scene." Counsel stated that he looked at the police department's drawing of the crime scene. Counsel did not look into to the background of the petitioner's co-defendant, because if he had a criminal record, it would have been an inadmissable juvenile record.

Counsel said that he had no defense for the petitioner if they had proceeded to trial because he "was faced with a confession that said [the petitioner] did it." According to counsel, the state was "talking about severing out the co-defendant" to allow him to testify against the petitioner. Counsel recalled that the petitioner's co-defendant "inculpated [the petitioner] in this matter." Counsel did not know if being a minor was a mitigating factor, but based on the crime, "there [was] a limit" to what he could do for the petitioner.

On redirect examination, counsel identified a copy of the petitioner's guilty plea, the petitioner's statement, and the co-defendant's statement, which the court admitted into evidence. Counsel stated that he and the petitioner's family were present during the guilty plea hearing and that the petitioner's family agreed that pleading guilty was the best thing to do. The petitioner was on bond while counsel represented him and according to counsel they met on several occasions prior to the plea. Counsel said that he could not remember what he told the petitioner regarding the evidence against him "other than the fact that [he] told him that [they] just didn't have anywhere to go." On recross-examination counsel stated that he and the petitioner met on court dates and there were other occasions that they had separate conferences.

Following the hearing, the post-conviction court entered an order denying the petitioner's request for post-conviction relief. The court made extensive findings of fact and determined that the petitioner did not meet his burden of proving that his attorney's performance was deficient and that his attorney's deficient performance prejudiced the outcome of the proceedings.

Petitioner filed a timely notice of appeal. On appeal, the petitioner claims that he received the ineffective assistance of counsel which caused him to enter an unknowing and involuntary guilty plea. As support for his claim, the petitioner asserts that his attorney was ineffective in that he failed to adequately prepare for trial and coerced petitioner into entering an unknowing and involuntary guilty plea.

**ANALYSIS**

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations of fact set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is de novo with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Strickland*, 466 U.S. at 697; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Strickland*, 466 U.S. at 697.

The two-part standard of proving ineffective assistance of counsel also applies to claims arising out of the plea process. The prejudice requirement is modified so that the petitioner must show a reasonable probability that, but for the errors of counsel, the petitioner would not have pled guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994). It is also helpful to note that when determining the knowing and voluntary nature of the guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

"When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *see also Scott v. State*, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the

petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. *Black*, 794 S.W.2d at 757. Neither the trial court nor this court can speculate on what a witness's testimony might have been if introduced by counsel. *Id.*

In the instant case, the record supports the post-conviction court's findings. Further, the petitioner failed to present material witnesses at the post-conviction hearing in support of his allegations. Trial counsel testified that the petitioner was charged with Class A felonies and was "looking at a minimum of forty years and a maximum of fifty years had he been convicted." Counsel further stated that the initial offer by the prosecution had been twenty-five years, but was later reduced to fifteen years. Counsel stated that he recommended the fifteen-year offer to the petitioner because they had no defense to the charges. Counsel stated that he had open file discovery with the prosecution and reviewed witnesses' statements and a diagram of the crime scene. Counsel investigated the statement of one of the [police] officers who saw the petitioner at the scene of the crime with the cash drawer in his hands. Counsel reviewed the co-defendant's statement which implicated the petitioner. The petitioner admitted his involvement in the crime in the presence of his mother. The petitioner conferred with trial counsel and family members prior to entering his guilty pleas. During his plea submission, petitioner stated to the trial judge that he was entering his pleas voluntarily. Trial counsel stated that the victim hesitated to speak to him and was still suffering from the shock of being stabbed during the incident. Motions were filed by counsel and counsel was of the opinion that the co-defendant's prior record would have been inadmissible at trial because he was a juvenile and that there was nothing to be gained by visiting the scene of the crime.

The transcript of the guilty plea submission clearly reveals that the petitioner entered his guilty pleas knowingly and voluntarily, and the record supports the post-conviction court's finding that trial counsel was not ineffective in his representation of petitioner.

Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
J.C. McLIN, JUDGE